UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL ALFARO,<br><br>                Petitioner,<br><br>vs.<br><br>AL RAMIREZ,<br><br>                Respondent. | Case No. 1:16-cv-00124-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

Michael Alfaro's Amended Petition for Writ of Habeas Corpus is fully briefed and ripe for adjudication. Dkts. 6, 24, 25. The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by the parties. *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006). Having carefully reviewed the record, including the state court record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order.

**REVIEW OF PRELIMINARY MOTIONS**

Pending before the Court are Respondent Al Ramirez's requests for extensions of time regarding briefing of the remaining issues. Dkts. 22, 23. Good cause appearing, both motions will be granted. Respondent's Response to the Amended Petition is considered timely.

# BACKGROUND

The Idaho Court of Appeals provided the following background to this case:

> In the summer of 2004, [the town of] Caldwell[, Idaho] experienced a spate of drive-by shootings between rival gangs. One shooting occurred at approximately 3:30 a.m. on August 14, 2004, while Javier "Harvey" Rodriguez, Sael Castillo, Jason Alverado and Carlos Chavez, all associated with the "Westside Lomas" (Westside) gang, were at Rodriguez's house. A vehicle drove by, and two of its passengers began shooting at the house, resulting in Chavez being killed. It was the third shooting investigated by Caldwell police that night alone.
>
> When police arrived on the scene they found various bullet casings in the area, but the bullet that killed Chavez could not be tied to a particular weapon. One neighbor reported seeing a blue car speed away after the shooting, while another described a light tan car with three occupants. Rodriguez told the police he arrived at the house mere moments before the shooting and that Castillo and Alverado were outside in front of the house and Chavez was inside at the time. He could not describe the vehicle from which the shots had been fired and was generally uncooperative in aiding the investigation. After interviewing over 100 people in relation to Chavez's death, the police never recovered a weapon, never identified the vehicle, and had no suspects.
>
> In June 2005, Evan Musquiz, a teenager associated with the "Eastside Locos" (Eastside) gang, who was thirteen years old at the time of Chavez's shooting, told police he had been in a light blue four-door car with other Eastsiders, Arandu Maceda, Richard Alaniz, and a person he only knew as "Mike" who was driving. Musquiz stated the four had driven around for a while and then drove by a residence where Maceda and Alaniz opened fire, shooting at the house and the men in front of the house. Musquiz was shown a six person photo lineup, in which Alfaro was number three, and indicated "Mike" was either two or three. Musquiz could not identify the time of year or the time of day the shooting had taken place, other than to say it was dark. When police provided Musquiz with the location of Rodriguez's house and

> asked whether it was the location of the shooting, Musquiz said yes. Following Musquiz's interview, Alaniz denied any involvement in the shooting.
>
> In June 2009, another Eastside gang member, Mario Flores, was charged with multiple felonies, including recruiting gang members, supplying firearms, and witness intimidation. Police questioned him as to whether he had any knowledge pertaining to Chavez's death, which he had denied possessing when interviewed shortly after the shooting. This time, Flores told police he had observed Maceda and Musquiz getting into a black Cadillac with Alfaro and Alaniz on the night of August 14, 2004. In exchange for his cooperation, all charges against Flores were dismissed.

State's Lodging B-4, pp. 1-2.

The plea-bargaining codefendants who participants in the drive-by shooting that resulted in Chavez's death ended up testifying against Petitioner Alfaro in a state criminal action in the Third Judicial District Court in Canyon County, Idaho. Petitioner was charged with and convicted by jury of aiding and abetting first degree murder, aiding and abetting aggravated assault, aiding and abetting unlawful use of a firearm, and infliction of great bodily harm, for being the driver of the car from which the shooter shot and killed Chavez.

Petitioner received a prison sentence of 20 fixed years, with life indeterminate. Judgment was entered on January 3, 2011. Petitioner filed a direct appeal and a post-conviction action in state court. This federal habeas corpus case was stayed for several months to permit Petitioner to exhaust his state court remedies. Dkt. 4. Petitioner obtained no relief from his state court actions, and this case was re-opened on May 22, 2017. Dkt. 7.

Respondent filed a Motion for Partial Summary Dismissal, which the Court granted. Dkts. 13, 21. Claims One and Four were deemed procedurally defaulted, and the Court determined that no exception applied to excuse their default. Petitioner was permitted to proceed to the merits of Claims Two and Three.

## STANDARD OF LAW

When a petitioner files a federal habeas corpus action to challenge a state court judgment, Title 28 U.S.C. § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), applies. Title 28 U.S.C.§ 2254(d) limits relief to instances where the state court's adjudication of the petitioner's claim:

1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

Though the source of clearly established federal law must come only from the holdings of the United States Supreme Court, lower federal court decisions addressing similar fact patterns may be used as comparisons for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013).

To assess whether habeas corpus relief is warranted, the federal district court reviews "the last state-court adjudication on the merits." *Greene v. Fisher*, 565 U.S. 34, 40 (2011). The deferential standard of section 2254(d) applies regardless of whether the state court decision "is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id*. at 99. When the last adjudication on the merits provides a reasoned opinion, federal courts evaluate the opinion as the grounds for denial. 28 U.S.C. 2254(d).

However, where the state's highest court did not issue a reasoned decision, courts within the Ninth Circuit review the decision of the Idaho Court of Appeals, using the "look through" principle of *Ylst v. Nunnemaker*, 501 U.S. 797 (1991), and "presume the higher court agreed with and adopted the reasons given by the lower court." *Curiel v. Miller*, 830 F.3d 864 (9th Cir. 2016).[1]

**MERITS REVIEW OF REMAINING CLAIMS**

1. **Claim Two: Prosecutorial Misconduct**

Petitioner asserts that the prosecutor's closing argument violated his right to a fair trial and due process. The prosecutor called the defense attorney's arguments a "red

---

[1] The United States Supreme Court recently clarified: "In *Ylst*, we said that where "the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits. 501 U.S., at 803, 111 S.Ct. 2590," but that the presumption can be refuted by "strong evidence." *Kernan v. Hinojosa*, 136 S. Ct. 1603, 1605–06 (2016).

MEMORANDUM DECISION AND ORDER - 5

herring fishing expedition" and allegedly disparaged defense counsel.

### A. Standard of Law

The standard for a claim of prosecutorial misconduct on habeas review is a "narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). Because habeas corpus is concerned only with prejudicial constitutional error, a prosecutor's comments or actions that may be considered inappropriate under the rules of fair advocacy, or even reversible error on direct review, will not warrant federal habeas relief unless the alleged misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. at 643.

Where "the impropriety complained of effectively deprived the defendant of a specific constitutional right, a prosecutorial misconduct claim may be established without requiring proof that the entire trial was thereby rendered fundamentally unfair." *Id*. at 643. Inquiry into the fundamental fairness of a trial requires the court to examine the effect of any misconduct within the context of the entire proceedings. *Id*. Where the prosecutor's argument does not "manipulate or misstate the evidence nor . . . implicate other specific rights of the accused such as the right to counsel or the right to remain silent" there generally is no error on habeas review. *Darden*, 477 U.S. at 181-82. "It is not enough that the prosecutor's remarks were undesirable or even universally condemned." *Id*. at 179. Moreover, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct

must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *United States v. Young*, 470 U.S. 1, 11 (1985).

### B. Background and State Court Decision

The prosecutor's statement at issue occurred during the rebuttal argument, where the following exchange occurred:

> [Prosecutor]: [Defense counsel] in the opening told you they weren't contesting the shooting and the death of Carlos Chavez. [Defense counsel] stood up here and told you they weren't contesting the shooting of Carlos Chavez. The only issue is [whether Alfaro is] the driver. Yet [defense counsel] spent the last hour contesting the details of the shooting. That's what his closing was doing.
>
> [Def. Atty.]: Judge, for the record, I'll object to the characterization and as to the court's rulings previously.
>
> [Prosecutor]: We just went on an hour-long red herring fishing trip.
>
> [Def. Atty.]: Same objection, Judge.
>
> [The Court]: You're allowed a continuing objection.

State's Lodging A-4, pp.823-24.

Petitioner raised this prosecutorial misconduct claim on appeal. The Idaho Court of Appeals rejected the claim. State's Lodging B-4, p. 4. The court relied on an earlier case that addressed a similar instance, *State v. Norton*, 254 P.3d 77 (Idaho Ct. App. 2011). There, the defendant raised a prosecutorial misconduct claim for referring "to the defense arguments as red herrings and smoke and mirrors" during the prosecutor's

MEMORANDUM DECISION AND ORDER - 7

closing argument. The defendant argued that the remarks were "an impermissible attack intended to encourage the jury to focus on the conduct of defense counsel rather than the evidence of guilt." *Id*. at 88-90. Finding that the prosecutor's comments "were not directed at defense counsel personally, but rather were comments on the defense theories," the Idaho Court of Appeals concluded "that the prosecutor's rebuttal argument referring to some of defense counsel's arguments as red herrings and smoke and mirrors was not misconduct." *Id*. at 90.

### C. Discussion

This Court agrees with the Idaho Court of Appeals' analysis and conclusion. The prosecutor's remarks were directed at the *content* of the defense attorney's closing argument, not at the defense attorney himself. Nothing in the prosecutor's statement disparaged the defense attorney personally; it simply pointed out that the defense strategy was internally inconsistent. That is permissible argument. Neither has Petitioner explained how the comment, in the context of the whole trial, infected the trial with unfairness. Petitioner has not shown that the Idaho Court of Appeals' decision is contrary to or amounts to an unreasonable application of *Darden, DeChristoforo*, or *Young*. Therefore, habeas corpus relief is not warranted.

### 2. Claim Three

Petitioner asserts that the district court violated his right to a jury trial and due process by sentencing him more harshly than other participants in the crime who became the State's witnesses. Petitioner alleges that the Court applied a vindictive sentence to punish Petitioner for his decision to proceed to trial.

### A. Standard of Law

The United States Supreme Court has not spoken to the exact issue that Petitioner brings before the Court—whether a *non-pleading* co-defendant's sentence after a jury finding of guilty must be proportional to the sentences the *pleading* co-defendants received to avoid a claim that the court imposed a vindictive sentence for the defendant that chose to proceed to trial, which would be a due process violation. The Supreme Court has held that, after a defendant is found guilty after trial but is permitted a second trial at which he is again found guilty, the sentencing court cannot impose a greater sentence on that defendant without "objective information justifying the increased sentence." *Alabama v. Smith*, 490 U.S. 794, 798-99.

However, if a defendant pleads guilty, withdraws his plea, proceeds to trial, and is found guilty, the judge is permitted to increase the defendant's sentence because during the "course of the proof at trial the judge may gather a fuller appreciation of the nature and extent of the crimes charged." *Id*. at 801. In addition, the defendant's "conduct during trial may give the judge insights into his moral character and suitability for rehabilitation." *Id*. The Supreme Court also recognized the "same mutual interests that support the practice of plea bargaining to avoid trial may also be pursued directly by providing for a more lenient sentence if the defendant pleads guilty." *Id*. at 802-03 (citing *Corbitt v. New Jersey*, 439 U.S. 212, 221-223 (1978)). "We have squarely held that a State may encourage a guilty plea by offering substantial benefits in return for the plea," said the Court in *Corbitt*. 439 U.S. at 219.

### B. Background and State Court Decision

During the prosecution's argument for its sentencing recommendation, the prosecution compared and contrasted the characteristics and sentences of the plea-bargaining participants in the crime with Petitioner's characteristics and recommended sentence. State's Lodging A-4, pp. 21-34. Petitioner's attorney did not object at sentencing to any of the talk of the differences in sentences between those participants who bargained for a lesser sentence in return for testifying and the sentence that was recommended for Petitioner, who chose to go to trial. As a matter of fact, Petitioner's own attorney contrasted the different sentences and argued that Petitioner should receive the minimum sentence possible for first degree murder, ten years fixed and life indeterminate, because one of the plea-bargaining gunmen in the case would be serving a minimum of only six years. *Id.*, pp. 36-50. Both attorneys discussed the different factors of pleading guilty under a plea agreement and exercising one's right to go to trial. Neither hinted that going to trial should result in a longer sentence; each simply tried to argue fairness amongst all of the sentences.

Therefore, it is somewhat misleading for Petitioner to characterize the sentencing court's motive as "vindictiveness" for Petitioner's decision to proceed to trial, because the issue of comparison and contrasting the sentences of the co-defendants had already been laid out on the table by the prosecution and defense attorneys. The Court did not launch out in a new direction when it began explaining its reasoning for Petitioner's sentence, but it was addressing the arguments before the Court.

In his habeas corpus Petition, Petitioner pins this claim on the following expression by the sentencing judge:

> The definition of malice is to act deliberately with the knowledge that you're creating a danger to or having a conscious disregard for human life.
>
> Driving up there to Canyon Hill knowing that you have loaded weapons, slowing down with the lights off, and letting the guns fire is reckless disregard for human life, and, of course, human life was lost. And it was just a guy that was in the kitchen making a sandwich. How fair is that? There's no fairness in that. There's no fairness in the fact that it took so long for the crime to even be uncovered. There was no justice for Carlos Chavez for many years.
>
> And the only reason that we've come to this point is that the state had to offer plea bargains to Mr. Alaniz and to – well, I think Mr. Musquiz, too. That I think that the state would agree that the amount of time that they agreed to in these plea bargains did not create a situation of justice.
>
> Now, one of the things that has weighed on this court's mind ever since there's been a conviction is how can the court treat Mr. Alfaro any differently than the state agreed to treat Mr. Maceda or the state agreed to treat Mr. Alaniz. And it's been difficult to reconcile that in my mind objectively. But here's what the court's thoughts are. This was a deliberate disregard for human life knowing full well that there was a high likelihood that somebody was going to lose their life. It is the most heinous crime that anybody can commit, and it needs to be treated that way. And there needs to be a message sent out to these small groups of individuals that live in our community that we cannot allow this to happen. We're sick and tired of it. And the rest of us that live law-abiding lives in this community cannot be living in fear of this trash that has no regard for human life. It makes no sense.

Dkt. A-4, pp. 54-55.

Petitioner's attorney did not object to either the prosecution's comparison of the sentences, nor the court's. Because an issue for which there was no objection normally cannot be the subject of an appeal, the Idaho Court of Appeals reviewed the claim under the fundamental error doctrine. State's Lodging B-4, pp. 8-9.

In addressing this claim, the Idaho Court of Appeals explained its understanding of Petitioner Alfaro's reasoning as follows:

> Alfaro was sentenced to a unified term of life, with twenty years determinate, on the murder conviction and five years determinate for each remaining count, with all sentences to run concurrently. In arguing the district court imposed a longer sentence in retaliation for his decision to go to trial, Alfaro focuses on the fact that Alaniz, who actually fired a weapon at the residence, only received a unified term of fifteen years, with six years determinate. The "sole distinction," between Alfaro and Alaniz, Alfaro contends, is that Alaniz elected to plead guilty and testify against Alfaro. He points out that in sentencing him, the district court opined that the plea bargained sentence of Alaniz and the other perpetrators did not serve justice, but that the State had been forced into those agreements because Alfaro had exercised his right to a jury trial. Alfaro argues that none of the district court's other rationales, including deterrence, justified the imposed sentence, and therefore, he asserts the district court sentenced him more harshly because he exercised his right to trial.

*Id.*, pp. 9-10.

The Idaho Court of Appeals rejected this argument, finding sufficient evidence in the record that the state district court based the length of Petitioner's sentence on "requisite sentencing objectives." *Id.*, p. 10. Those objectives included: (1) "protection of society"; (2) deterrence required a longer sentence because a "'message' needed to be sent to individuals in the community that such actions could not be tolerated"; (3) it was a

"'heinous' crime that deserved significant retribution." *Id*. The Court of Appeals concluded: "The sentences imposed were based on proper statutory considerations, not a desire to punish Alfaro for proceeding to trial, and therefore, Alfaro has failed to show the district court committed fundamental error in imposing sentence." *Id*. While the state district court "recognized the disparity" between the lighter sentences of those who chose to testify and "expressed concern about how to reconcile it," the decision ultimately was based on appropriate sentencing concerns. *Id*.

### C. Discussion

This Court agrees that the totality of the record supports the conclusion that the Idaho Court of Appeals' decision was not contrary to, or an unreasonable application of, the sparse United States Supreme Court precedent governing this area of law. The majority of the sentencing hearing focused on discussions of the differences between the defendants, their part in the crime, their sentences, and the reasons behind those sentences. Obviously, the fact that some of the participants bargained for a lesser sentence by providing testimony against one of the participants has a value to the State, because, otherwise, this crime may never have been solved. It is clear that the State must offer gang members sentences that are enticing enough for them to be witnesses for the State, notwithstanding the real fear they may have of retribution from gang members. For example, in this instance, the State reported:

> Mr. Alfaro's brother, Eddie Alfaro, is out at the prison and is one of the highest ranking members in the prison gang and is basically what they call a shock collar out at the prison. Mr. Alfaro, here, the defendant, has been sending letters to Eddie identifying who cooperated, who testified. And of

> concern to the state is what is being done with that information.

State's Lodging A-4, p. 24. In addition, when defendants voluntarily take responsibility for their part in a crime, a shorter sentence may be warranted, because it shows that the defendants are more likely to be rehabilitated.

The duty of the sentencing court is to balance all of the interests involved: rehabilitation of the defendant, the deterrence effect of the sentence on the defendant and others, the safety and needs of the community, and retribution for an act that was calculated to cause severe injury or death, and that caused the death of a person who was a son, brother, and father in a close and loving family. In trying to balance all of the relevant factors, the sentencing court crafted a sentence that was appropriate to Petitioner's particular character, background, and involvement in the crime. That the sentencing court *discussed* the facts of the co-defendants' pleas and their resulting favorable sentences in light of the task at hand—to sentence Petitioner after a jury verdict by using the requisite sentencing objectives—does not mean the sentencing court imposed a vindictive sentence for Petitioner having chosen to proceed to trial. Rather, the judge's reasoning aloud demonstrated the depth and breadth of the thought he put into crafting Petitioner's sentence. Respondent has cited to several persuasive lower federal court cases that support the reasoning of the Idaho Court of Appeals. *See* Dkt. 24, pp. 27-28. Petitioner, on the other hand, has cited to cases having fact patterns that are unlike his own and that do not support a grant of habeas corpus. *See* Dkt. 2, p. 5. While not cases of precedent, they demonstrate that the Idaho Court of Appeals' decision is not

unreasonable in light of existing United States Supreme Court case law. Hence, this claim is without merit and will be denied.

## ORDER

1. Respondent's Motions for Extension of Time (Dkts. 22, 23) are GRANTED.

2. The Petition is DENIED and DISMISSED with prejudice.

3. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: December 10, 2018

David C. Nye
U.S. District Court Judge